TODD WILLET, APPELLANT, V. COUNTY OF LANCASTER, NEBRASKA, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.

713 N.W.2d 483

Filed May 5, 2006.    No. S-05-204.

Peter C. Wegman and Brian S. Kruse, of Rembolt Ludtke, L.L.P., for appellant.

William R. Johnson and Kyle Wallor, of Lamson, Dugan & Murray, L.L.P., for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

CONNOLLY, J.

Appellant, Todd Willet, sued Lancaster County (County) to recover for injuries he received as a result of a two-vehicle collision. Ronald P. McMackin, the other driver, ran a stop sign and struck Willet's vehicle at the intersection of McKelvie Road and North First Street (the intersection). Willet argues that a private landowner constructed a berm at that corner, which encroached into the right-of-way and obstructed the two drivers' views, preventing them from avoiding the collision. He claims that the County breached its duty by ignoring the risk the berm created. The trial court granted summary judgment to the County, and Willet appeals. We affirm the trial court's dismissal because no

genuine issue of material fact shows that the County's actions proximately caused the collision. Even if the County breached its duty to Willet, McMackin's negligence was an efficient intervening cause.

## BACKGROUND

On April 18, 1999, Willet was returning from a shopping trip with his son and his son's friend, driving west on McKelvie Road. At the same time, McMackin was running late for work and heading south on North First Street. The roads are gravel with a 50-m.p.h. speed limit and stop signs for drivers on North First Street. Drivers on McKelvie Road had no stop sign.

The collision occurred when McMackin ran the stop sign and Willet's vehicle struck McMackin's vehicle near the front driver's-side door. According to Joseph W. Gehr, an accident reconstructionist and deputy sheriff, the vehicles impacted again from another angle before Willet's vehicle launched into the air, flipped over, and ended up on its top in a field on the southwest corner of the intersection. McMackin's vehicle also ended up in the field. Willet's son and McMackin died at the scene, Willet's son's friend died later at the hospital, and Willet survived the collision, but sustained serious injuries to his head, back, and legs.

Willet settled with McMackin's estate. Willet then sued the County, alleging that the berm on the northeast corner of the intersection encroached on the right-of-way and obstructed the drivers' view, contributing to the collision. The County moved for summary judgment.

On the motion for summary judgment, the following evidence was submitted. Gehr and Deputy Young investigated conditions at the scene after the collision. Gehr concluded that McMackin ran the stop sign at "a good speed." Gehr noted that the berm presented "a slight visual obstruction," stating that "[i]t does cause some visual obstruction, however it is in my opinion there is still plenty of sight distance when a person is stopped at the stop sign." Gehr also conducted an experiment to determine visibility. He explained:

> With the assistance of Deputy Young, I did do some type measurements with Deputy Young using his patrol vehicle I had him go east of the accident scene. I stood at the imaginary stop line approximately the area that . . . McMackin

would have been had he stopped for the stop sign. I then had Deputy Young travel his vehicle down McKelvie Road and had him stop at the point where I could first see his vehicle. I then measured that distance, came up with a distance of 600 feet. I then moved up a little bit still not in the intersection yet but to the imaginary shoulder line of McKelvie Road and from there I had a sight distance of 952 feet which was to the top of that hill with full visibility.

Gehr explained in his deposition that by sight distance and visibility, he meant "[f]or a southbound vehicle if [it] were to make a stop at the stop sign."

Another accident reconstructionist, Ted Sokol, submitted an affidavit. Sokol stated that the berm "limited the view of both southbound and westbound motorists." Sokol conducted a computer analysis of the vehicles' speeds, which indicated that at the time of impact, Willet's vehicle was traveling between 37 and 43 m.p.h., and McMackin's vehicle was traveling between 41 and 50 m.p.h. Sokol ultimately concluded that McMackin ran the stop sign on North First Street, entering the intersection at approximately 45 m.p.h., and presented the "sole cause" of the collision.

A friend of Willet who lives within 5 miles of the intersection submitted an affidavit explaining that a private landowner built the berm in the 1980's. This witness considered it a hazard, stating that the berm "created a blind intersection, obstructing the vision of westbound motorists on McKelvie Road and southbound motorists on [North First] Street, literally 'hiding' vehicles behind the berm."

A heavy equipment operator for the County's engineering department also noted in his deposition that the berm concerned him. He explained that the berm obstructed motorists' vision. Specifically, he stated:

Basically that when you pull up to the stop sign when you're southbound there, that you had to be very careful that somebody wasn't coming westbound.

. . . .

. . . In particular for my part of the job as a road grader because you have that long front end on there, and I had to carefully poke the front end out there. Not that I had to poke it into the road, but just slowly because of the berm.

A former road maintenance superintendent for the County stated in his deposition that he is familiar with the intersection because he used to drive through it on his way to and from work. He stated that he saw the berm as it was gradually built over time, but he was not concerned about the berm's interfering with drivers' vision because drivers can see when they are stopped at the stop sign.

In Willet's deposition, he also testified about the berm. He recalled telling his wife before the collision that it "was a terrible setup for an intersection." He elaborated that the intersection had limited visibility and that it was "[b]lind" when traveling west-bound on McKelvie Road because you could not see southbound traffic on North First Street. Willet also explained that because of the hazardous intersection, he "paid as close . . . attention as pos-sible" and drove slower when using that route. But Willet also admitted in his deposition that if McMackin had stopped at the stop sign, the collision would not have occurred.

The district court granted the summary judgment to the County on numerous alternate grounds. Willet appeals.

## ASSIGNMENTS OF ERROR

Willet assigns, rephrased, that the district court erred in find-ing that (1) the County is entitled to immunity under the Political Subdivisions Tort Claims Act, § 13-901 et seq. (Reissue 1997), or discretionary function immunity for failure to maintain road-ways and failure to warn of known defects; (2) the County owed no duty to Willet because the condition of the intersection was obvious to the public; (3) the berm did not obstruct or interfere with vision for vehicles at the intersection and was not a proxi-mate cause of the collision; (4) McMackin's actions were an effi-cient intervening cause and unforeseeable by the County; (5) the County's negligence was passive and not active, creating a condi-tion and not a cause, and that the range of vision rule bars Willet's recovery; and (6) Willet failed to exercise reasonable care under the circumstances when he approached the intersection.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and evi-dence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn

from those facts and that the moving party is entitled to judgment as a matter of law. *Strong v. Omaha Constr. Indus. Pension Plan*, 270 Neb. 1, 701 N.W.2d 320 (2005).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. See *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 270 Neb. 809, 708 N.W.2d 235 (2006).

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate it is entitled to judgment as a matter of law. See *Cerny v. Longley*, 270 Neb. 706, 708 N.W.2d 219 (2005).

## ANALYSIS

Willet essentially argues that the County was negligent in failing to properly maintain the intersection and failing to warn him about the dangerous condition of the intersection. He contends that the County waived its sovereign immunity under § 13-910(12) and *Woollen v. State*, 256 Neb. 865, 593 N.W.2d 729 (1999). He also objects to the trial court's individual findings on his claims. But we need not address all of his claimed errors because the dispositive issue is whether the County's conduct proximately caused the collision.

Willet filed his claim under the Political Subdivisions Tort Claims Act. To recover under the act, a claimant must prove all four of the basic elements of negligence: duty, breach of duty, proximate causation, and damages. See *Scholl v. County of Boone*, 250 Neb. 283, 549 N.W.2d 144 (1996). Thus, even if we assume that the County waived its immunity and breached its duty to maintain the intersection or warn drivers about its condition, Willet cannot recover unless the County's conduct was a proximate cause of the collision.

Three basic requirements establish proximate cause. First, the negligence must be such that without it, the injury would not have occurred, commonly known as the "but for" rule. Second, the injury must be the natural and probable result of the negligence. Third, there can be no efficient intervening cause. See

*Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988) (citing *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986)).

The court found that no genuine issue of material fact existed whether the berm proximately caused the collision. The court alternately premised that conclusion on several grounds. However, we do not address each ground because we agree with the court that *even if* the County failed to maintain the intersection or warn drivers about its condition, McMackin's actions constitute an efficient intervening cause, which broke the causal connection between the County's wrongdoing and the collision.

An efficient intervening cause is new and independent conduct of a third person, which itself is a proximate cause of the injury in question and breaks the causal connection between the original conduct and the injury. See *Zeller v. County of Howard, supra.*

> " ' " " 'The causal connection is broken if between the defendant's negligent act and the plaintiff's injury "there has intervened the negligence of a third person who had full control of the situation and whose negligence was such as the defendant was not bound to anticipate and could not be said to have contemplated, which later negligence resulted directly in the injury to the plaintiff." ' " ' "

*Id.* at 673-74, 658-59 (quoting *Shelton v. Board of Regents*, 211 Neb. 820, 320 N.W.2d 748 (1982)). In other words, an intervening act cuts off a tort-feasor's liability only when the intervening cause is not foreseeable. See *Delaware v. Valls*, 226 Neb. 140, 409 N.W.2d 621 (1987).

Willet concedes that McMackin's failure to obey the stop sign was a proximate cause of the collision. And no one disputes that McMackin acted negligently by disobeying the stop sign. Thus, the only question is whether the County should have foreseen McMackin's decision to run the stop sign and enter an obstructed intersection at high speed. In *Delaware v. Valls, supra*, we addressed the foreseeability of another driver's negligence. There, the passenger on a dirt bike that collided with a vehicle in a visually obstructed intersection sued the private landowner responsible for the obstruction. We concluded that the landowners

were not bound to anticipate and cannot be said to have con-
templated that [the other driver] would negligently attempt
to traverse the intersection when he could not see what he
needed to see in order to do so safely or that [the dirt bike
driver] would . . . fail to see [the other driver] in time to
avoid the collision.

*Id.* at 145, 409 N.W.2d at 624.

Similarly, in *Zeller v. County of Howard*, 227 Neb. 667, 419
N.W.2d 654 (1988), the passenger in a truck which was struck
while driving 15 m.p.h. through an unprotected and obstructed
intersection sued Howard County for failing to replace a stop
sign at the site. We held that despite the low rate of speed, the
driver of the truck unreasonably disregarded the obvious danger
of the intersection, failing to take appropriate measures to avoid
the collision. And because the driver's behavior was unforesee-
able to the county, his conduct constituted an efficient interven-
ing cause of the collision.

We reasoned that the driver

had complete control over the situation because he could
have avoided the collision by exercising reasonable care
while driving the [truck] toward and into the intersection.
Howard County, even if negligent regarding the absent stop
sign in question, was not bound to anticipate, and could not
have contemplated, that [the truck's driver] would totally
and unreasonably disregard the obvious danger inherent in
vehicular travel into a visually obstructed intersection of
public roads and fail to take appropriate measures to avoid
the collision.

*Id.* at 675, 419 N.W.2d at 659.

■ Moreover, we have held that one traveling on a favored
street protected by a traffic signal of which one has knowledge
may properly assume that oncoming traffic will obey it. See,
*Floyd v. Worobec*, 248 Neb. 605, 537 N.W.2d 512 (1995);
*Paddack v. Patrick*, 163 Neb. 355, 79 N.W.2d 701 (1956).

The undisputed facts show that (1) McMackin approached a
blind intersection when he could not see westbound traffic until
almost in the intersection, (2) he had to realize that any vehicle
approaching on his left could not see him until it was almost in

the intersection, and (3) he disregarded the stop sign and entered the intersection traveling approximately 45 m.p.h.—a speed that limited his ability to avoid collision with any oncoming vehicle that might become visible once he cleared the obstruction.

Willet concedes that McMackin disobeyed the stop sign and that the collision would not have occurred had McMackin stopped. Further, testimony indicated that when stopped at the stop sign, drivers could adequately see approaching vehicles. Thus, McMackin could have prevented the collision by exercising reasonable care in obeying the stop sign or reducing his speed so that he could react appropriately; nonetheless, he failed to do so.

The record is undisputed that if McMackin would have stopped at the stop sign and proceeded cautiously, he would have seen Willet's vehicle approaching the intersection. The County was not bound to anticipate—and could not have contemplated—that McMackin would disregard the obvious danger inherent in disobeying a stop sign and entering an obstructed intersection at high speed. Thus, McMackin's negligent behavior was unforeseeable to the County and constituted an efficient intervening cause of the collision.

## CONCLUSION

Willet failed to prove a genuine issue of material fact exists whether the County's actions proximately caused the collision, because even if the County breached its duty to Willet, McMackin was an efficient intervening cause of the collision. Thus, we affirm the trial court's summary judgment.

AFFIRMED.

WRIGHT, J., not participating.