CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT, V. JAMES E. HERSHBERGER AND SANDRA M. HERSHBERGER, APPELLEES.

725 N.W.2d 787

Filed January 5, 2007.    No. S-05-1066.

Dana W. Roper, Lincoln City Attorney, and James D. Faimon for appellant.

Joel D. Nelson, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The City of Lincoln (the City) loaned money to PMI Franchising, Inc. (PMI), pursuant to a project financing agreement. James E. Hershberger and Sandra M. Hershberger were guarantors on the loan. PMI failed to repay any of the installment payments, and the City, in a letter dated February 28, 1995, exercised its right to accelerate the debt under the agreement. The City filed suit against the Hershbergers on September 20, 1999. The district court granted the Hershbergers' motion for summary judgment, concluding that the statute of limitations had run on the City's claim. The City appealed. Because the statute of limitations began to run when the City exercised its right to accelerate the debt, we conclude that the City's claim is not barred by the 5-year statute of limitations. We reverse, and remand for further proceedings.

## FACTS

On June 8, 1993, the City and PMI entered into a "Project Financing Agreement." Pursuant to this agreement, the City agreed to loan PMI $49,500 and PMI agreed to repay the loan. Paragraph 5 of the financing agreement provided for monthly payments of interest only for the first 24 months and amortized

payments of principal and interest over the following 60 months, for a total term of 7 years. With regard to default and termination of the agreement, paragraph 16 provided:

> The City may terminate this Agreement, if PMI should default in the performance of any of the terms or requirements hereof. The City shall provide PMI written notice of such default and if PMI fails to correct such default within 30 days of receipt of such notice, this Agreement shall be terminated. Upon termination, the unpaid balance plus accrued interest to the date of termination shall become due and payable in full immediately on the date of termination.

As officers of PMI, the Hershbergers signed the financing agreement. As part of the financing agreement, each of the Hershbergers also signed an individual guaranty for PMI's obligations under the agreement. Each guaranty provided that the guarantor would unconditionally repay funds loaned to PMI "when due, pursuant to the financing agreement."

At some point between June 8, 1993, and March 4, 1994, the City disbursed $23,753.43 to PMI. The record reveals that PMI never made any payments to the City. On February 28, 1995, the City wrote the Hershbergers, declaring that PMI had defaulted under the minimum repayment terms of the agreement. The City's letter stated in relevant part:

> This correspondence satisfies the City's obligation to provide PMI Franchising, Inc. written notice of default as outlined in Paragraph #16 of the agreement. If the default is not corrected to the satisfaction of the City of Lincoln, the agreement will be terminated as stated in Paragraph #16 of the agreement. At that time, the entire unpaid principal balance of $23,753.43 plus accrued interest will be due and payable and the City will be forced to consider all legal alternatives available.

PMI did not correct its default, and on September 20, 1999, the City filed a petition in the district court against PMI and the Hershbergers. The City filed a second amended petition in December 1999, which is the operative petition. In the second amended petition, the City alleged that PMI failed to repay the loan contrary to the provisions of the agreement and that the Hershbergers had failed to comply with the provisions of the

guaranties. The City alleged that pursuant to the agreement, the City had sent a letter on February 28, 1995, declaring PMI to be in default. In the petition, the City asserted that the unpaid principal and accrued interest was due and payable. The City prayed for a judgment against PMI and the Hershbergers in the amount of the unpaid principal of $23,753.43 plus accrued interest, as well as costs and attorney fees.

The Hershbergers filed an answer in which, among other things, they admitted the loan of "approximately $23,000.00" and affirmatively alleged that the City's action against them was barred by the statute of limitations. Although PMI was served, no answer or other appearance was filed on behalf of PMI. During the course of the proceedings in the district court, a default money judgment was entered against PMI and the claim continued against the Hershbergers individually as guarantors.

The Hershbergers moved for summary judgment on the basis that the action was time barred by the 5-year statute of limitations found in Neb. Rev. Stat. § 25-205 (Reissue 1995). Following an evidentiary hearing, the court agreed with the Hershbergers and on January 31, 2001, dismissed the City's operative petition. The court reasoned that the statute of limitations began to run on June 8, 1993, the date the agreement was signed, and that because the City did not file its action until 1999, the suit was barred.

The City appealed, and the case was transferred to this court's docket. In *City of Lincoln v. PMI Franchising*, 267 Neb. 562, 675 N.W.2d 660 (2004), we reversed the district court's decision. In so doing, we cited *Production Credit Assn. of the Midlands v. Schmer*, 233 Neb. 749, 448 N.W.2d 123 (1989), which states that " '[t]he statute of limitations begins to run against a contract of guaranty the moment a cause of action first accrues' and that '[a] guarantor's liability arises when the principal debtor defaults.' " *PMI Franchising*, 267 Neb. at 567, 675 N.W.2d at 664. Given this language, we concluded that "the district court erred when it determined that the statute of limitations on the City's cause of action against the Hershbergers began to run when the Hershbergers signed the guaranties on June 8, 1993. Instead, the statute of limitations began to run when PMI defaulted and the Hershbergers' liability arose." *Id.*

at 568-69, 675 N.W.2d at 665. We remanded the cause for further proceedings.

Upon remand, both parties offered additional exhibits into evidence. The Hershbergers offered, among other things, the deposition of the coordinator of economic development for the City, the affidavits of the Hershbergers, and certain other documents received through discovery. The City offered exhibits 8 and 9, which included the deposition testimony of James Hershberger and a certified copy of the executive order approving the financing agreement.

The district court again granted the Hershbergers' motion for summary judgment, concluding that "the Hershbergers' liability arose before March 4, 1994, which was more than five years before September 20, 1999." As a result, the court determined that the City's claim was barred by the 5-year statute of limitations. The City appealed.

## ASSIGNMENTS OF ERROR

The City assigns, restated and renumbered, that the district court erred in (1) determining that the City's claim against PMI was barred by the 5-year statute of limitations; (2) determining that the economic development coordinator, a former city employee, had authority to determine when the financing agreement was in default; (3) concluding that the City initially distributed the money to PMI on June 7, 1993; and (4) misapplying the law of the case as it relates to the application of the statute of limitations to the guarantors' liability for payment of the principal alleged to be due.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Didier v. Ash Grove Cement Co.,* ante p. 28, 718 N.W.2d 484 (2006). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

The question before this court is: At what point in time did the statute of limitations begin to run on the City's claim against the Hershbergers? Section 25-205 provides in relevant part that an action upon any agreement, contract, or promise in writing must be commenced within 5 years of accrual of a cause of action. The contracts at issue in the present case are the financing agreement entered into between the City and PMI, and the Hershbergers' contracts of guaranty on the financing agreement.

As an initial matter, we note that the financing agreement between the City and PMI is an installment contract with an optional acceleration clause. The financing agreement is an installment contract because the agreement's repayment provision in paragraph 5 obligated PMI to make monthly installment payments to the City. The financing agreement also contained an optional acceleration clause in paragraph 16, which clause granted the City the right, upon PMI's default and the City's providing adequate notice, to accelerate the debt and declare the entire amount immediately due.

Our determination that the financing agreement is an installment contract with an acceleration clause is significant because this affects when the statute of limitations began to run. With regard to installment contracts, we have stated that "[i]n the absence of a contractual provision allowing acceleration, where an obligation is payable by installments, the statute of limitations runs against each installment individually from the time it becomes due." *National Bank of Commerce v. Ham*, 256 Neb. 679, 682, 592 N.W.2d 477, 479-80 (1999). But, where a contract contains an option to accelerate, the statute of limitations for an action on the whole indebtedness due begins to run from the time the creditor takes positive action indicating that the creditor has elected to exercise the option. *Id.*

In *Ham*, a borrower entered into a personal money reserve plan agreement on July 5, 1989, with National Bank of Commerce (NBC). The agreement, which contained an acceleration clause, required the borrower to repay, in monthly installments, any money lent to him. The borrower was loaned $1,000, but failed to make payments in January, March, and May 1990. A representative of NBC sent a letter to the borrower on approximately

August 15, informing him that NBC was exercising its option to accelerate. On July 14, 1995, NBC sued the borrower to recover the amount due under the agreement. We concluded that NBC's claim against the borrower was not barred by the 5-year statute of limitations because the statute of limitations began to run in August, when NBC gave written notice of its election to accelerate the unpaid balance due. *Id.*

■ The same principles apply here. Although the present case involves guarantors asserting a statute of limitations defense, as opposed to the original debtor, the principles upon which we relied in *Ham* apply equally to the original debtor and the guarantor of the same debt. See *Phoenix Acquisition v. Campcore, Inc.*, 81 N.Y.2d 138, 612 N.E.2d 1219, 596 N.Y.S.2d 752 (1993). Under these circumstances, a guarantor steps into the shoes of the original debtor and has all the same obligations and defenses of the original debtor. See, e.g., *Bessette v. Weitz*, 148 Md. App. 215, 811 A.2d 812 (2002). Therefore, the fact that the Hershbergers are guarantors of the debt, and not the original debtor, does not affect our analysis.

In the present case, it is undisputed that at some point between June 8, 1993, and March 4, 1994, the City loaned PMI $23,753.43. Although the record does not reflect the exact date the money was distributed, this uncertainty is of no consequence to our analysis. PMI never made any of its installment payments, and on February 28, 1995, the City exercised its right to accelerate the debt when the City's coordinator of economic development sent the Hershbergers a letter. The City's letter expressly stated, in writing, that PMI was in default and provided 30 days for PMI to correct its default, thus satisfying the requirements for acceleration. Because the City exercised its right to accelerate and PMI failed to correct its default within 30 days, the entire amount of the debt became due.

As previously stated, the statute of limitations for an action on the whole indebtedness due begins to run from the time the creditor takes positive action indicating that it has elected to exercise the option. We conclude that the statute of limitations began to run on the City's claim against PMI on February 28, 1995, the date the City sent its letter to the Hershbergers indicating the City's intent to exercise its right to accelerate. Because

that was the date of PMI's default for purposes of the City's action against PMI, it was also the date upon which the statute of limitations began to run on each guaranty.

The City filed its petition on September 20, 1999; accordingly, the City's claim against the Hershbergers is not barred by the 5-year statute of limitations. Because we conclude the statute of limitations has not run on the City's claim against the Hershbergers, we need not address the City's remaining assignments of error.

## CONCLUSION

We conclude that the statute of limitations began to run on the date the acceleration clause was exercised. Because the City's petition was filed less than 5 years after the City exercised its right to acceleration, the City's claim against the Hershbergers is not barred by the statute of limitations. Accordingly, we reverse the judgment and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.