JAMES MALOLEPSZY AND LYNN MALOLEPSZY, APPELLANTS,
v. STATE OF NEBRASKA, APPELLEE.
729 N.W.2d 669

Filed April 6, 2007.   No. S-05-993.

James E. Schaefer and Jill A. Daley, of Gallup & Schaefer, for appellants.

Jon Bruning, Attorney General, and Matthew F. Gaffey for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

James Malolepszy was injured as the result of a motor vehicle accident in a highway construction zone when another driver drove his vehicle from the shoulder into the lane in which James was driving. James and his wife, Lynn Malolepszy, sued the State of Nebraska. The district court granted the State's motion for summary judgment, finding that the other driver's negligence was the proximate cause of James' injuries. The Malolepszys appeal.

## SCOPE OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *City of Lincoln v. Hershberger*, 272 Neb. 839, 725 N.W.2d 787 (2007). In reviewing a summary

judgment, an appellate court views the evidence in a light most favorable to the party against whom judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## FACTS

In May 2001, the Nebraska Department of Roads (DOR) was expanding U.S. Highway 6 (also known as West Dodge Road) in Omaha, Nebraska, from a two-lane road to a four-lane divided highway between approximately 162d and 174th Streets. Highway 6 ran east and west, and it remained open for public travel in each direction during the construction project. Near 168th Street, an overpass was being built over West Dodge Road. The supporting pillars were in place on the south side of the highway, and the road had a slight "S curve" next to the overpass structure. The highway had a double yellow centerline and white lines along each side. On each side of the road, next to the paved shoulder, there was a flat area covered with dirt and gravel that was approximately wide enough for two vehicles to sit side-by-side. (A photograph in the record indicates there was sufficient room for two pickup trucks to be parked parallel to each other in the area next to the shoulder.) Orange barrels were placed along the side of the road in the vicinity of the accident.

At approximately 12:30 p.m. on May 23, 2001, James was driving east on Highway 6. In the vicinity of the planned overpass near 168th Street, Charles Atkins had stopped his pickup truck next to the south shoulder of the eastbound lane. Atkins' truck was facing in a northwesterly direction. When James was approximately one-half to one car length from where Atkins' truck was stopped, Atkins pulled out in front of James' vehicle, and the collision occurred. James was seriously injured.

Lynn was traveling in a separate vehicle two cars behind James. Just prior to the collision, she observed a pickup truck sitting off the shoulder of the highway in the dirt. The truck pulled out in front of James' vehicle as he was about half a car length away from it. An individual who witnessed the accident from a distance of 15 to 20 car lengths stated that the driver of the truck was on the side of the road and then "all of a sudden" came into the road and hit another vehicle. No evidence was

presented as to how or why Atkins' truck came to be next to the shoulder or as to the direction in which he was headed prior to the collision.

The Malolepszys filed an action against the State pursuant to the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 2003), asserting three causes of action: negligence, negligent infliction of emotional distress, and loss of consortium. They claimed that (1) the State had a duty to warn of the dangerous and hazardous conditions existing on the roadway and to use fundamental safety principles when routing traffic through construction and maintenance sites, (2) the State breached its duty when it failed to provide adequate warnings and safe roadway conditions, and (3) the resulting injuries were directly and proximately caused by the negligence of the State. The State filed a third-party petition against Atkins and the construction company that was working on the highway project. Atkins and the construction company were subsequently dismissed as parties.

The State filed a motion for summary judgment and offered into evidence the affidavit of Joseph Baratta, DOR project manager. Baratta said that on the date of the accident, the State was reconstructing West Dodge Road from 162d to 174th Street and building an interchange at 168th Street. The construction zone roadway was configured as an undivided two-way road providing one lane for eastbound traffic and one lane for westbound traffic. The centerline of the road was marked with a double solid yellow line, and the edges of the lanes were delineated with solid white lines. The posted speed limit was 45 m.p.h., and the entire construction zone was designated as a no-passing zone.

Baratta went to the scene on the day of the accident and observed that the double solid yellow centerline was bright, clearly visible, and unbroken at the location of the accident and at all locations within sight distance of the accident. The solid white edge lines were also bright, clearly visible, and unbroken at the location of the accident and at all locations within sight distance of the accident. At the time of the accident, the weather conditions were dry and cloudy. The lighting conditions were good and did not limit or impair the visibility of the roadway or the vehicles traveling on it.

Baratta was able to determine the location where Atkins' truck was stopped along the side of the road immediately before it entered the eastbound lane and collided with James' vehicle. Baratta said he stood at various locations at or near the spot where Atkins was stopped, and at all such locations, he had an unobstructed view of the entire eastbound lane of West Dodge Road from the point of the collision to the crest of a small hill approximately one-third of a mile to the west of the accident scene.

The State also offered the affidavit of John Baker, a registered professional engineer who worked as a roadway design engineer for the DOR. He stated that he was able to determine the approximate location where Atkins' truck was stopped along the south side of West Dodge Road prior to the time it entered the eastbound lane. From this location, Baker determined that Atkins had at least 591 feet of unobstructed sight distance for observation of eastbound vehicles on West Dodge Road. The sight distance available to Atkins exceeded the sight distance guidelines set forth for permanent roadways with a posted speed limit of 45 m.p.h., even though the guidelines for permanent roadways do not apply in construction zones. The sight distance available to Atkins also exceeded the guidelines for permanent roadways with a posted speed limit of 60 m.p.h.

The Malolepszys offered an affidavit by George Lynch, an accident reconstructionist, who opined that the vehicles crashed because the State posted an unsafe speed limit at the location of the accident. He also stated that there was an inadequate width of driving lane at the crash site and that the State failed to maintain or post adequate warning signals or proper signage along the roadway. At 45 m.p.h., the perception and reaction time of James and Atkins did not provide for an adequate stopping distance, and the design of the roadway did not allow James or Atkins a chance to avoid the collision. Improper or inadequate barricades were also a factor because motorists were not properly warned of the impending hazard of the "S curve" in the construction zone. Lynch stated that the hazard was not eliminated by the State, which had a duty to adequately warn the motoring public, and that the failure to do so was a cause of the accident.

In an additional discovery document, Lynch listed a number of factors that contributed to the accident: (1) lack of adequate signage in good condition; (2) lack of "directional and/or speed advisories"; (3) placement of barricades too close to the traffic-way; (4) lack of pattern to the 36-inch drums located on the side of the roadway; (5) allowance of speed limit in violation of Neb. Rev. Stat. § 60-6,188 (Reissue 2004), which provides that the maximum speed limit through any construction zone on the state highway system shall be 35 m.p.h. in rural areas and 25 m.p.h. in urban areas; (6) lack of an adequate divider lane; (7) lack of "[c]enter lane tubular markers" to prevent crossover into opposing traffic; (8) insufficient width of the roadway for traffic flow and volume; (9) lack of warning signs about slight curve; and (10) lack of adequate shoulder.

The district court sustained the State's motion for summary judgment, concluding as a matter of law that Atkins was negligent and that his negligence was the sole proximate cause of the collision. The State's design and construction choices were superfluous to the collision because the State should not have been bound to anticipate that a driver in Atkins' position would negligently enter an oncoming lane of traffic without yielding to traffic in that lane. The court dismissed the petition against the State with prejudice.

## ASSIGNMENT OF ERROR

In summary, the Malolepszys assign as error the granting of the State's motion for summary judgment.

## ANALYSIS

The district court granted the State's motion for summary judgment, finding that the negligence of Atkins was the sole proximate cause of the accident. Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *City of Lincoln v. Hershberger*, 272 Neb. 839, 725 N.W.2d 787 (2007). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against

whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

In order to recover in a negligence action brought pursuant to the State Tort Claims Act, the plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *Fu v. State*, 263 Neb. 848, 643 N.W.2d 659 (2002). Generally, it is the duty of the State to use reasonable and ordinary care in the construction, maintenance, and repair of its highways and bridges so that they will be reasonably safe for the traveler using them while in the exercise of reasonable and ordinary care and prudence. *Shepard v. State of Nebraska*, 214 Neb. 744, 336 N.W.2d 85 (1983); *Hammond v. Nemaha Cty.*, 7 Neb. App. 124, 581 N.W.2d 82 (1998).

The Malolepszys argue that the district court erred in finding that Atkins was negligent and that his negligence was the proximate cause of the collision. They assert that the collision resulted from the State's failure to provide adequate signage through the construction site, warnings concerning the speed and usage of the lanes, an appropriate speed limit, an adequate divider lane, and a reasonably safe roadway. We focus on the element of causation because it is decisive of the cause before us.

To establish proximate cause, there are three basic requirements. "First, the negligence must be such that without it, the injury would not have occurred, commonly known as the 'but for' rule. Second, the injury must be the natural and probable result of the negligence. Third, there can be no efficient intervening cause." *Willet v. County of Lancaster*, 271 Neb. 570, 575, 713 N.W.2d 483, 487 (2006). In the case at bar, the district court determined that the proximate cause of the collision was the negligence of Atkins. But for Atkins' act of pulling out onto the roadway in front of James' vehicle, the injury to James would not have occurred. James' injury was the natural and probable result of Atkins' pulling his truck out in front of the vehicle James was driving.

The State argues that even if it was negligent in the construction of the roadway, we must consider whether there was an efficient intervening cause. While the district court did not specifically use the term "efficient intervening cause" in its order, the court determined that the design and construction choices

made by the State concerning the roadway were "superfluous to this collision" because the State was not bound to anticipate that a driver in Atkins' position would negligently enter an oncoming lane of traffic without yielding to vehicles in that lane.

"An efficient intervening cause is new and independent conduct of a third person, which itself is a proximate cause of the injury in question and breaks the causal connection between the original conduct and the injury." *Id.* at 576, 713 N.W.2d at 488. The causal connection is severed when (1) the negligent actions of a third party intervene, (2) the third party had full control of the situation, (3) the third party's negligence could not have been anticipated by the defendant, and (4) the third party's negligence directly resulted in injury to the plaintiff. See *Willet v. County of Lancaster, supra.*

In *Willet*, Lancaster County was sued to recover for injuries sustained following a two-vehicle collision. The driver of one of the vehicles involved ran a stop sign and struck Todd Willet's vehicle at an intersection where a private landowner had constructed a berm. Willet argued that the berm encroached into the right-of-way and obstructed the drivers' views and that the county breached its duty by ignoring the risk created by the berm. The trial court granted summary judgment to the county, and this court affirmed the dismissal, finding that no genuine issue of material fact remained to show that the county's actions proximately caused the collision.

We also found that even if the county breached its duty to Willet, the other driver's negligence was an efficient intervening cause. We stated that the negligent driver could have prevented the collision by exercising reasonable care in obeying the stop sign or reducing his speed so that he could react appropriately. *Willet v. County of Lancaster*, 271 Neb. 570, 713 N.W.2d 483 (2006). This court found it undisputed that if the negligent driver had stopped at the stop sign and proceeded cautiously, he would have seen Willet's vehicle approaching the intersection.

> The County was not bound to anticipate—and could not have contemplated—that [the negligent driver] would disregard the obvious danger inherent in disobeying a stop sign and entering an obstructed intersection at high speed. Thus,

[the negligent driver's] negligent behavior was unforeseeable to the County and constituted an efficient intervening cause of the collision.

*Id.* at 578, 713 N.W.2d at 489.

In evidence offered by the Malolepszys, they suggest a number of examples of ways in which the State was negligent, including failure to provide adequate signage throughout the construction site, an appropriate speed limit, and an adequate divider lane. However, it cannot be disputed that Atkins acted negligently by pulling out in front of James' vehicle. A motorist has the duty to look both to the right and to the left and to maintain a proper lookout for the motorist's safety and that of others. *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002). As a general rule, a motorist's failure to look, when looking would have been effective in avoiding a collision, is negligence as a matter of law. *Krul v. Harless*, 222 Neb. 313, 383 N.W.2d 744 (1986). We have limited the application of this general rule to situations where another vehicle is indisputably located in a favored position and situations where a driver charged with negligence as a matter of law executed a dangerous driving maneuver which, in part, led to a collision. *Id.* The question is whether the State should have foreseen the possibility that Atkins would fail to look and would execute a dangerous driving maneuver from the shoulder onto the roadway in front of James' vehicle.

We considered the foreseeability of another driver's negligence in *Delaware v. Valls*, 226 Neb. 140, 409 N.W.2d 621 (1987), in which a collision occurred between a dirt bike and an automobile at an intersection that was visually obstructed. A passenger on the dirt bike sued the private landowner who was responsible for the obstruction. This court held that the landowners

were not bound to anticipate and cannot be said to have contemplated that [the dirt bike driver] would negligently attempt to traverse the intersection when he could not see what he needed to see in order to do so safely or that [the automobile driver] would . . . fail to see [the dirt bike driver] in time to avoid the collision. Thus, [the dirt bike driver's] negligence and that alleged on the part of [the automobile driver] are efficient intervening causes.

*Id.* at 145, 409 N.W.2d at 624.

In *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988), this court also considered an efficient intervening cause. A passenger in a truck was injured after it was struck while driving at a low rate of speed through an unprotected and obstructed intersection. The passenger sued Howard County for failing to replace a stop sign at the intersection. We held that the truck's driver failed to take appropriate measures to avoid the collision and unreasonably disregarded the obvious danger of the intersection. The driver's conduct was an efficient intervening cause of the collision because his behavior was unforeseeable to the county. We stated:

> [The driver] had complete control over the situation because he could have avoided the collision by exercising reasonable care while driving the pickup toward and into the intersection. Howard County, even if negligent regarding the absent stop sign in question, was not bound to anticipate, and could not have contemplated, that [the driver] would totally and unreasonably disregard the obvious danger inherent in vehicular travel into a visually obstructed intersection of public roads and fail to take appropriate measures to avoid the collision.

*Id.* at 675, 419 N.W.2d at 659.

The undisputed facts in this case show that (1) James was eastbound on West Dodge Road in the construction zone; (2) Atkins' truck was stopped along the south shoulder of the road, facing northwest; (3) Atkins, suddenly and without warning, drove his truck in front of James' vehicle; and (4) James had no time to stop before colliding with Atkins' truck. Evidence presented by the State indicated that there was adequate distance for Atkins to have seen James' vehicle approaching.

Whether the signage placed by the State in the construction zone was adequate is a disputed fact that is of no importance. Atkins could have prevented the collision by waiting for James' vehicle and other cars to pass before pulling his vehicle onto the roadway from the shoulder. The record shows that Atkins' vision was not obscured by any equipment in the construction zone and that the weather was not a factor on the day of the accident. The State was not bound to anticipate that a vehicle stopped along the

shoulder of the road would suddenly pull out in front of oncoming traffic.

The Malolepszys also argue that if the State had provided adequate barriers or channelizing devices to separate the two lanes of traffic, it would have been impossible for Atkins to end up on the south side of the highway with his vehicle facing in the wrong direction. Thus, Atkins would not have pulled out in front of oncoming traffic and collided with James. There is nothing in the record to establish how or why Atkins' vehicle was along the south shoulder of the highway. Atkins did not recall anything about the accident.

The Malolepszys theorized during oral argument that the accident occurred because Atkins was driving westbound, realized he was in the wrong lane, and pulled over on the south shoulder of the road. They hypothesized that Atkins pulled out in front of James' vehicle to resume his westbound trip. Their theory does not change the fact that Atkins' negligence was the proximate cause of James' injuries.

The Malolepszys argue in great detail concerning the various alleged negligent acts of the State. As noted above, even if the design of the construction zone was negligent, the evidence shows that the State's actions were not the proximate cause of the collision. Atkins' negligent behavior was unforeseeable to the State and constituted an efficient intervening cause of the collision.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Dutton-Lainson Co. v. Continental Ins. Co.*, 271 Neb. 810, 716 N.W.2d 87 (2006). We have viewed the evidence in the light most favorable to the Malolepszys and given them the benefit of all reasonable inferences deducible from the evidence. We find no error in the order of the district court, which determined that Atkins' negligence was the sole proximate cause of the collision. The State's design for the construction zone did not cause the collision. The State could not have anticipated that a driver in Atkins' position would enter an oncoming lane of traffic without yielding to vehicles in that lane. Atkins' actions were not foreseeable to the State and

constituted an efficient intervening cause of the collision and James' resulting injuries.

## CONCLUSION

The district court was correct in granting summary judgment in favor of the State because Atkins' negligence was the sole proximate cause of the injuries to James. The judgment is affirmed.

AFFIRMED.