754 N.W.2d 616 (2008)
16 Neb. App. 817
Shauna WILKEN, Mother and Next Friend of Cheyenne Wilken and Wyatt Wilken, Minor Children, and Jeffery Wilken, Appellants and Cross-Appellees,
v.
CITY OF LEXINGTON, a Political Subdivision of the State of Nebraska, Appellee and Cross-Appellant.
No. A-07-553.
Court of Appeals of Nebraska.
July 1, 2008.
*619 Maren Lynn Chaloupka and Robert Paul Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, Scottsbluff, for appellants.
Thomas J. Culhane and Jason R. Yungtum, of Erickson & Sederstrom, P.C., Omaha, for appellee.
SIEVERS, MOORE, and CASSEL, Judges.
MOORE, Judge.

INTRODUCTION
Shauna Wilken, mother and next friend of the minor children, Cheyenne Wilken and Wyatt Wilken, and Jeffery Wilken (Wilken) brought a negligence action against the City of Lexington, Nebraska (City), in the district court for Dawson County. The district court granted summary judgment in favor of the City. Shauna and Wilken (hereinafter the Appellants) appeal, and the City cross-appeals. Because the court did not err in finding an efficient intervening cause cutting off any liability on the part of the City for the injuries to Wilken, Cheyenne, and Wyatt, we affirm the order granting the City's motion for summary judgment.

BACKGROUND
On October 4, 2004, the Buffalo County sheriff's office received a report of a missing juvenile, W.V., who resided in Elm Creek, Nebraska, and was reported missing by her mother. The Lexington Police Department received the missing person report the day it was issued.
On October 5, 2004, Kenneth Schumacher, an investigator with the Lexington Police Department, received a report from an acquaintance that the acquaintance's son had brought home an unknown young girl. Schumacher went to the acquaintance's home in Lexington, where he met a female juvenile who identified herself as W.V. Schumacher asked W.V. to come with him to the police department. W.V. left the house, walked to Schumacher's vehicle, and rode with Schumacher to the police station without any restraints such as handcuffs. Nor did Schumacher control W.V. by holding on to her.
When Schumacher and W.V. arrived at the police station, W.V. got out of the vehicle, walked into the station, and accompanied Schumacher to his office without any restraints or resistance. Schumacher interviewed W.V. in his office without incident. Schumacher telephoned the Buffalo County sheriff's office, learned additional information about W.V., determined *620 that she was the missing juvenile, and arranged for delivery of W.V. to the Buffalo County sheriff's office, all while W.V. was unrestrained in his office.
Schumacher and Buffalo County Deputy Sheriff Katherine Tvrdik arranged to meet near the county line in Overton, Nebraska, to allow Tvrdik to pick up W.V. and return her to Buffalo County authorities. Shortly after making these arrangements, Schumacher and W.V. left the Lexington Police Department, walked to Schumacher's vehicle, and began the drive to Overton. W.V.'s entry into Schumacher's vehicle and the trip to Overton were completed without incident. At no time during the trip was W.V. restrained, and she made no effort to flee or resist Schumacher in his efforts to return her to Buffalo County.
During the time Schumacher and W.V. were together on October 5, 2004, W.V advised Schumacher that she had run away from home and that she had taken a vehicle from Elm Creek the previous day that was not hers, but that she believed she was authorized to drive it. W.V. also told Schumacher that she had used methamphetamine in the preceding year and had used it during the 24 hours preceding her apprehension by Schumacher. According to Schumacher, W.V. did not appear to be under the influence of any substance, including methamphetamine, despite her disclosure. Schumacher also learned that W.V. had been involved in an argument and possibly a fistfight with another girl at her school on the previous day.
Upon reaching Overton, Schumacher parked his car at a gas station to wait for Tvrdik. W.V. was seated in the front passenger seat of Schumacher's vehicle and was unrestrained except for the seatbelt that she had worn during the trip. When Tvrdik arrived, Schumacher told W.V. to leave the car, and he watched while she unbuckled her seatbelt and began to open the passenger-side door. Schumacher then got out of the vehicle, leaving the key in the ignition and the engine running, and he walked to the vehicle driven by Tvrdik.
As Schumacher was handing a written report to Tvrdik, W.V. climbed behind the steering wheel of Schumacher's vehicle and drove off at a high rate of speed. Schumacher got into Tvrdik's vehicle, and Tvrdik began a pursuit of W.V. The pursuit was terminated before W.V. was apprehended, due to public safety concerns. At all relevant times, Schumacher was on duty as an investigator for the City and the car driven initially by Schumacher and then taken by W.V. was owned and maintained as a police vehicle by the City.
After taking Schumacher's vehicle, W.V. returned to Lexington and picked up E.G., also a juvenile. W.V. and E.G. drove to Cozad, Nebraska, stealing another vehicle and subsequently abandoning Schumacher's vehicle. Schumacher's vehicle was recovered on October 6, 2004, outside of Lexington, where it had been abandoned by W.V. and E.G. W.V. and E.G. took various items from Schumacher's vehicle, including a loaded police-issued shotgun which was in the trunk of the vehicle.
W.V. and E.G.'s next encounter with law enforcement officials occurred on October 6, 2004, when a Nebraska State Patrol officer spotted them in the vehicle stolen from Cozad and attempted to stop them. E.G. was driving, and when E.G. stopped the vehicle, W.V. got out and used the shotgun taken from Schumacher's vehicle to shoot at the patrol officer. After escaping from the patrol officer, W.V. and E.G. abandoned the vehicle stolen from Cozad and stole a third vehicle.
On October 7, 2004, W.V. and E.G. were seen in Holdrege, Nebraska, and officers from various law enforcement agencies began *621 a pursuit of W.V. and E.G. in Phelps County, Nebraska. The law enforcement officers pursued W.V. and E.G. on Phelps County Road 748, at which time the stolen vehicle encountered a pickup truck being driven in the opposite direction by Wilken. In the rear seat of Wilken's pickup were his two children, Cheyenne and Wyatt. As the stolen vehicle approached Wilken's pickup, E.G., using the shotgun and ammunition stolen from the trunk of Schumacher's vehicle, fired a shot at the pickup. The shot hit the rear side window of the pickup, shattering the glass. Cheyenne and Wyatt sustained physical injuries. Later on October 7, the pursuit of W.V. and E.G. concluded at a different location, at which time W.V. and E.G. were apprehended.
On October 21, 2005, the Appellants filed a complaint against the City under Nebraska's Political Subdivisions Tort Claims Act. The Appellants alleged that Cheyenne and Wyatt sustained physical and mental injuries and that Wilken sustained mental injuries, all of which were proximately caused by the City's negligence. Specifically, the Appellants alleged that the City was negligent in that (1) Schumacher left an unrestrained prisoner and a loaded shotgun in his running vehicle, while he exited the vehicle to visit with another person, and failed to take reasonable measures to prevent W.V. from absconding with his vehicle and weapon and (2) the City negligently supervised Schumacher during the course of his employment. The Appellants sought compensatory damages for past and future medical expenditures, psychiatric treatment, and pain and suffering in an amount to be proved at trial.
On March 15, 2007, the City filed a motion for summary judgment. On March 21, the Appellants filed a motion for partial summary judgment seeking summary judgment on the issue of the City's negligence.
After a hearing on the parties' summary judgment motions, the district court entered an order on May 11, 2007, overruling the Appellants' motion for partial summary judgment and granting summary judgment in favor of the City. The court observed that the reported cases in Nebraska addressing the issue of foreseeability and proximate cause in the context of the actions of a third party typically involve the actions of a third party with whom the allegedly negligent party had some contact or a relationship. The court noted that in this case, the third party whose act caused the injury, E.G., is in reality a "`fourth party'" who had no direct contact with the City, the alleged negligent party. The court observed that E.G. used resources from the "third party," W.V., to injure Wilken, Cheyenne, and Wyatt and that those resources were obtained by W.V. by virtue of the alleged negligence of the City.
In considering the question of the City's duty, the district court found no genuine issue of material fact that the Lexington Police Department had taken control of W.V. and that W.V. was a person who Schumacher knew or should have known was likely to cause bodily harm to others if she was not controlled. The court concluded that the evidence established that a "`special relationship'" existed between the City and W.V., which imposed a duty upon the City to control W.V.'s conduct. The court further concluded that there was no genuine issue of material fact that Schumacher did not control W.V.'s conduct and that because of his failure, W.V. stole his vehicle and its contents. The court found that W.V.'s actions in stealing Schumacher's vehicle were reasonably foreseeable.
*622 The district court next considered proximate causation and found no genuine issue of material fact that the injuries suffered by Wilken, Cheyenne, and Wyatt were caused by E.G.'s discharge of the shotgun. The court concluded that E.G.'s actions were a new, independent force, which intervened between the City's negligent act and the injuries to Wilken, Cheyenne, and Wyatt. The court observed that E.G. had full control of the situation and that it was his conduct which resulted directly in the injuries. The court found that the City could not have reasonably anticipated or contemplated E.G.'s conduct, reasoning that E.G., his propensities, his dangerousness, and any relationship between him and W.V. were unknown to the City.
The court explained its reasoning regarding the finding of an efficient intervening cause further as follows:
The court can find no Nebraska cases which required an actor to foresee and avoid the intentional criminal acts of a fourth party whose criminal acts were committed with the assistance of a third party with whom the actor had a "special relationship." The firing of the shotgun by [E.G.] during the chase of [E.G.] and [W.V.] in Phelps County, Nebraska, two days after the initial contact between [Schumacher] and [W.V.], broke the causal connection between the original conduct of [Schumacher] and the injuries suffered by [Wilken, Cheyenne, and Wyatt].
While it can be argued that the City... had a duty to anticipate that the theft of one of its police vehicles containing a shotgun and ammunition could create the potential for dangerous circumstances and situations, such a result is not a natural "and probable" result. Crimes with shotguns can and do occur in a variety of settings and the fact that an additional shotgun became available to a person disposed as was [E.G.], does not support the imposition of liability for the unlawful use of the stolen shotgun. The facts alleged by the [Appellants] and those established by [the evidence at the summary judgment hearing] do not present the type of knowledge on the part of the City ... which would render the criminal conduct of an unknown person such as [E.G.] reasonably foreseeable.
The criminal acts of [E.G.] were an efficient intervening cause which destroys any claim that the alleged negligence of the City ... was the proximate cause of the ... injuries and damages.
(Emphasis in original.)

ASSIGNMENTS OF ERROR
The Appellants assert that the district court erred in granting the City's motion for summary judgment.
On cross-appeal, the City asserts that the district court erred in finding (1) that a special relationship existed between the City and W.V. such that the City had a duty to control W.V.'s conduct, (2) that Schumacher failed to control W.V. and consequently breached his duty, and (3) that it was foreseeable that W.V. would steal Schumacher's vehicle.

STANDARD OF REVIEW
[1] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Heinze v. Heinze, 274 Neb. 595, 742 N.W.2d 465 (2007).
[2] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against *623 whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Eastlick v. Lueder Constr. Co., 274 Neb. 467, 741 N.W.2d 628 (2007).

ANALYSIS

Efficient Intervening Cause.
[3, 4] The Appellants assert that the district court erred in granting the City's motion for summary judgment. Specifically, they argue that the court erred in determining that E.G.'s actions amounted to an efficient intervening cause, cutting off the City's liability for any negligence. A negligence action brought under the Political Subdivisions Tort Claims Act has the same elements as a negligence action against a private individual, i.e., duty, breach of duty, causation, and damages. Doe v. Omaha Pub. Sch. Dist., 273 Neb. 79, 727 N.W.2d 447 (2007). The question of causation, specifically, whether there was an efficient intervening cause cutting off the City's liability for any negligence, is at issue in the present appeal.
[5-7] The district court found that the Lexington Police Department had taken control over W.V., creating a special relationship and imposing a duty to control her conduct. However, the court found that the intervening intentional criminal conduct of E.G. was not foreseeable and was thus an efficient intervening cause, breaking any causal connection between the City's breach of its duty to control W.V. and the injuries to Wilken, Cheyenne, and Wyatt. To establish proximate cause, there are three basic requirements. First, the negligence must be such that without it, the injury would not have occurred, commonly known as the "but for" rule. Second, the injury must be the natural and probable result of the negligence. Third, there can be no efficient intervening cause. Malolepszy v. State, 273 Neb. 313, 729 N.W.2d 669 (2007). An efficient intervening cause is new and independent conduct of a third person, which itself is a proximate cause of the injury in question and breaks the causal connection between the original conduct and the injury. Id. An intervening act cuts off a tort-feasor's liability only when the intervening cause is not foreseeable. Willet v. County of Lancaster, 271 Neb. 570, 713 N.W.2d 483 (2006).
[8-10] It may be stated as a general rule that when, between original negligence and an accident, there intervenes a willful, malicious, and criminal act of a third person which causes the injury but was not intended by the person originally negligent and could not have been foreseen by him, the causal chain between the original negligence and the accident is broken. Shelton v. Board of Regents, 211 Neb. 820, 320 N.W.2d 748 (1982). The Nebraska Supreme Court has stated that the causal connection is broken if, between the defendant's negligent act and the plaintiff's injury, there has intervened the negligence of a third person who had full control of the situation and whose negligence was such as the defendant was not bound to anticipate and could not be said to have contemplated, which later negligence resulted directly in the injury to the plaintiff. Id. The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime. Id.
*624 In Shelton, an employee with a criminal background stole poison from his employer. The employee then broke into the homes of several people and placed the poison in beverages found in their homes. Several individuals were poisoned as a result, and some died. The injured parties sued the employer, alleging it was negligent in failing to discover the employee's criminal background and allowing him access to the poison. The Nebraska Supreme Court determined that the employee's criminal actions of stealing the poison, breaking into the homes, and poisoning the victims were the proximate cause of the appellants' injuries. The court observed that none of the employer's alleged failures was related in any way to those acts and that those acts could not have been reasonably contemplated by the employer. The court determined that because the employee's past criminal history did not involve theft or poisoning, even if the employer had learned of the criminal history, the employee's action still would not have been foreseeable.
[11] In Shelton, the Supreme Court found an efficient intervening cause where the alleged negligence was indirect and distant from the perpetration of the criminal act. In contrast, in Anderson/Couvillon v. Nebraska Dept. of Soc. Servs., 248 Neb. 651, 538 N.W.2d 732 (1995), the court found no efficient intervening cause where the defendant's alleged negligence has a direct connection with and effect on the criminal acts that followed. In Anderson/Couvillon, sexual assaults committed by a foster child were found not to be an efficient intervening cause between negligence on the part of the State and the injuries of the girls assaulted by the foster child. Because the State had knowledge of the foster child's violent propensities and potential for becoming a sexual abuser, the Supreme Court determined that the State could have anticipated or contemplated the foster child's attacks on the girls who were frequently in the home of the foster parents. Accordingly, the State had a duty to disclose, upon direct questioning by the girls' mother, those portions of the foster child's history that would create a danger to the girls. The court observed that once it is shown that a defendant had a duty to anticipate an intervening criminal act and guard against it, the criminal act cannot supersede the defendant's liability. Id.
In the present case, E.G.'s criminal act was the proximate cause of any injuries to Wilken, Cheyenne, and Wyatt. The record does not show that the City had any knowledge about E.G., his propensity for violence or crime, or any connection he may have had with W.V. prior to the events in question. Thus, E.G.'s actions were not such that the City should have anticipated them. E.G.'s actions were therefore a superseding cause.
[12-15] Law enforcement officials, including supervising probation officers and, consequently, state and local governments, generally may not be held liable for failure to protect individual citizens from harm caused by criminal conduct. Bartunek v. State, 266 Neb. 454, 666 N.W.2d 435 (2003). There are situations that provide exceptions to the no-duty rule: (1) where individuals who have aided law enforcement as informers or witnesses are to be protected or (2) where the police have expressly promised to protect specific individuals from precise harm. Brandon v. County of Richardson, 252 Neb. 839, 566 N.W.2d 776 (1997). There is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another unless (1) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct *625 or (2) a special relation exists between the actor and the other which gives to the other a right to protection. Bartunek, supra. One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm. Id.
The record does not show that the Appellants were informants or witnesses such that they needed to be protected; nor does the record reveal any express promise on the part of the City to protect the Appellants from precise harm. Further, there is nothing in the record to show a special relationship, or even any relationship, between the City and E.G. such that the City had a duty to control his conduct and prevent him from causing physical harm to another person. Finally, there is no evidence in the record of any special relationship between the City and the Appellants which would establish a duty by the City to specifically protect the Appellants from criminal action.
Viewing the evidence in the light most favorable to the Appellants and giving them the benefit of all reasonable inferences deducible from the evidence, as we must, we find no error in the district court's determination that the actions of E.G. were not foreseeable and were an efficient intervening cause, breaking the causal connection between the City's conduct and the injuries to Wilken, Cheyenne, and Wyatt. See Eastlick v. Lueder Constr. Co., 274 Neb. 467, 741 N.W.2d 628 (2007). Accordingly, we affirm the court's grant of summary judgment in the City's favor.

City's Cross-Appeal.
[16] Given our resolution of the above assignment of error, we need not address the City's assignments of error on crossappeal. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. Papillion Rural Fire Prot. Dist. v. City of Bellevue, 274 Neb. 214, 739 N.W.2d 162 (2007).

CONCLUSION
The district court did not err in granting the City's motion for summary judgment.
AFFIRMED.