CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

AMANDA LATZEL, AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF THOMAS LATZEL, DECEASED,
AND HERSELF, INDIVIDUALLY, APPELLANT, V.
RONALD BARTEK ET AL., APPELLEES.
___ N.W.2d ___

Filed May 2, 2014.    No. S-13-053.

1. **Summary Judgment.** Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
3. **Summary Judgment.** Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute.
4. ____. If a genuine issue of fact exists, summary judgment may not properly be entered.
5. **Summary Judgment: Proof.** The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.
6. **Summary Judgment: Evidence: Proof.** After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.
7. **Summary Judgment.** In the summary judgment context, a fact is material only if it would affect the outcome of the case.
8. **Negligence: Proof.** In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.
9. **Negligence.** The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.

(1)

10. ____. It is for the fact finder in a negligence case to determine, on the facts of each individual case, whether or not the evidence establishes a breach of that duty.

11. **Negligence: Proximate Cause: Proof.** To establish proximate cause, the plaintiff must meet three basic requirements. First, without the negligent action, the injury would not have occurred, commonly known as the "but for" rule. Second, the injury was a natural and probable result of the negligence. Third, there was no efficient intervening cause.

12. **Negligence: Proximate Cause: Words and Phrases.** An efficient intervening cause is new and independent conduct of a third person, which itself is a proximate cause of the injury in question and breaks the causal connection between the original conduct and the injury. The causal connection is severed when (1) the negligent actions of a third party intervene, (2) the third party had full control of the situation, (3) the third party's negligence could not have been anticipated by the defendant, and (4) the third party's negligence directly resulted in injury to the plaintiff.

13. **Negligence: Proximate Cause: Tort-feasors: Liability.** The doctrine that an intervening act cuts off a tort-feasor's liability comes into play only when the intervening cause is not foreseeable. But if a third party's negligence is reasonably foreseeable, then the third party's negligence is not an efficient intervening cause as a matter of law.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Eric B. Brown, of Atwood, Holsten, Brown & Deaver Law Firm, P.C., L.L.O., for appellant.

Gary J. Nedved and Joel Bacon, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee Ronald Bartek.

Robert W. Shively, Jr., and Emily R. Cameron, of Shively & Lannin, P.C., L.L.O., for appellee Doug Bartek.

Brian S. Kruse, of Rembolt Ludtke, L.L.P., for amicus curiae Nebraska Agricultural Legal Foundation.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
Thomas Latzel died as a result of catastrophic injuries he sustained in an automobile accident between drivers Daniel J. Vanekelenburg and Patrick L. Gaughen that occurred on

October 6, 2007, at the unmarked intersection of County Road 17 and County Road T in Saunders County, Nebraska. Thomas was a passenger in Vanekelenburg's vehicle at the time of the accident. Landowners and brothers, Ronald Bartek and Doug Bartek, owned the land to the southwest of the corner of the intersection, and they had planted corn on that land up to the ditch alongside the road. At the time of the accident, the corn had grown in excess of 7 feet high and obstructed the view of the intersection to some extent.

While Thomas was still alive, his wife, Amanda Latzel, brought this negligence action on behalf of herself and on behalf of Thomas against the drivers and the landowners. The district court for Lancaster County determined that the negligence of the drivers constituted an intervening cause as a matter of law and that therefore, Ronald and Doug were not liable. The district court granted the joint motion for summary judgment filed by the landowners, Ronald and Doug. After the remainder of the claims in the case were disposed of, Amanda appealed from the district court's order granting summary judgment in favor of Ronald and Doug. We determine that because reasonable minds could not differ, the actions of the drivers, Vanekelenburg and Gaughen, constituted an efficient intervening cause, which severed the causal connection between the landowners' conduct and Thomas' injuries. Thus, the district court did not err when it granted summary judgment in favor of the landowners, and we therefore affirm.

## STATEMENT OF FACTS

This case arises out of an automobile accident that occurred on October 6, 2007, at the unmarked intersection of County Road 17 and County Road T in Saunders County. Both County Road 17 and County Road T are gravel roads.

On the day of the accident, Thomas and two other people were passengers in a pickup truck driven and owned by Vanekelenburg. Vanekelenburg was driving his pickup truck eastbound on County Road T when it collided with another pickup truck driven and owned by Gaughen, who was traveling northbound on County Road 17. The intersection of County Road 17 and County Road T was unmarked.

The land to the southwest of the intersection was owned by brothers Ronald and Doug. Ronald and Doug had planted corn to the southwest of the corner of the intersection up to the ditch that runs alongside the road. The record indicates that at the time of the collision, the corn to the southwest of the corner of the intersection had not been harvested and had grown in excess of 7 feet tall.

Thomas was catastrophically injured as a result of the accident. He suffered permanent traumatic injuries, which ultimately led to his death 3 years later. Thomas' wife, Amanda, was appointed by the district court as the guardian and conservator for Thomas, who was incapacitated due to his injuries resulting from the collision.

On September 4, 2009, while Thomas was still living, Amanda filed this negligence action on behalf of herself and Thomas against Ronald, Doug, Vanekelenburg, and Gaughen. With respect to the claim on behalf of Thomas against the landowners, the complaint alleged that Ronald and Doug were negligent by planting the corn too close to the roadside, choosing to plant corn near the southwest corner of the intersection of County Road 17 and County Road T rather than other crops less likely to obstruct motorists' vision, and failing to use reasonable and proper care in the maintenance of their land. The complaint further alleged that Ronald and Doug were negligent pursuant to Neb. Rev. Stat. § 39-308 (Reissue 2008). Section 39-308 provides:

> It shall be the duty of the owner of real property to remove from such property any tree, plant, shrub, or other obstruction, or part thereof, which, by obstructing the view of any driver, constitutes a traffic hazard. When the Department of Roads or any local authority determines upon the basis of engineering and traffic investigation that such a traffic hazard exists, it shall notify the owner and order that the hazard be removed within ten days. Failure of the owner to remove such traffic hazard within ten days shall constitute a Class V misdemeanor, and every day such owner fails to remove it shall be a separate offense.

With respect to Amanda's individual claim, the complaint alleges that as a result of the negligence of the landowners and drivers, Amanda had incurred compensable damages, including loss of consortium, loss of services, and loss of past wages.

On June 30, 2010, by order of the district court, Amanda's case was consolidated with another case that had been brought against the drivers, Vanekelenburg and Gaughen, by the estate of another passenger in Vanekelenburg's pickup truck at the time of the accident.

On August 5, 2010, Ronald and Doug filed a joint motion for summary judgment. A hearing was held on the joint motion on October 12. At the hearing, Ronald and Doug jointly offered and the court received 14 exhibits, which were primarily photographs of the accident and depositions, including their own and those of the drivers. Amanda offered and the court received two exhibits, which were affidavits.

In their depositions, both Vanekelenburg and Gaughen stated that they were experienced rural drivers. Vanekelenburg testified that he had driven through unmarked intersections over the years and that when approaching such an intersection, he would slow down and look both ways before proceeding through the intersection. Vanekelenburg further testified that he understood it was the responsibility of a driver to yield to a driver approaching on the right. In this case, Vanekelenburg was eastbound on County Road T and Gaughen was northbound on County Road 17, thus approaching on Vanekelenburg's right. Like Vanekelenburg, Gaughen testified that he was familiar with the rule of the road that the driver on the left approaching an unmarked intersection is required to yield to the driver on the right.

With respect to the accident, Vanekelenburg testified that when he was approximately one-half mile away from the intersection, he was driving 15 to 20 miles per hour. He further stated that as he approached the intersection, he was "distracted," because he was uncertain which direction he was supposed to go. When asked whether he came to a full stop before the intersection, Vanekelenburg stated, "I'm pretty sure I did. But I can't swear to it." He further testified that due to

the accident, he does not have any memories of what happened once he entered the intersection. Vanekelenburg also stated that if the corn to the southwest of the corner of the intersection had been planted farther back from the intersection or if soybeans or alfalfa had been planted instead of corn, he would have had a better chance of seeing whether other vehicles were approaching the intersection.

With respect to the accident, Gaughen testified that he was traveling northbound on County Road 17, at approximately 46 to 47 miles per hour. In Gaughen's answers to Amanda's interrogatories, which were attached as an exhibit to his deposition, Gaughen stated that he was traveling 49 to 50 miles per hour. In his deposition, Gaughen stated that once he saw Vanekelenburg's vehicle as he approached the intersection, Gaughen thought that Vanekelenburg was going to stop, but then Gaughen "noticed nobody [in Vanekelenburg's vehicle] was even looking [his] way," so Gaughen applied his brakes and turned his vehicle to the right in an attempt to avoid the collision. Gaughen testified that if the corn to the southwest of the corner of the intersection had been planted farther back from the intersection or if a crop that did not grow as high as the corn had been planted on the land, he would have had a better chance of seeing the Vanekelenburg vehicle as it approached the intersection.

In their depositions, Ronald and Doug each testified that they owned the land at the southwest corner of County Road 17 and County Road T. Ronald stated that he had been a farmer for 35 years, and Doug stated that he had been a farmer for 20 to 25 years. Ronald and Doug each testified that they rotate the type of crop they plant on an annual basis, generally between corn and soybeans, in order to avoid toxicities that would build up in the soil if the same type of crop were planted each year. They each testified that they grow their crop up to the ditch that runs alongside the road.

Ronald testified in his deposition that he could anticipate that people would sometimes speed on gravel roads, and he agreed that "not everybody drives like grandpa and grandma." Doug also testified that people may speed on roads that go by his property. Neither Ronald nor Doug testified that

they anticipated drivers would proceed through the intersection when they could not see other traffic. When Ronald was asked whether he believed that his corn "obstructed the views of any drivers," Ronald responded that "[i]t would obstruct, yes."

At the hearing on the motion for summary judgment, Amanda offered and the court received the affidavit of the traffic crash reconstructionist who analyzed the accident at issue in this case. The traffic crash reconstructionist stated in his affidavit that the average height of the unharvested corn to the southwest side of the intersection was 7.1 feet and that the unharvested corn "was a contributing factor in this crash and influenced the crash as a view obstruction." He further stated that Vanekelenburg's eastbound vehicle was traveling at approximately 15 miles per hour at the time of impact and that Gaughen's northbound vehicle was traveling at approximately 44 miles per hour at the time of impact.

The traffic crash reconstructionist stated in his affidavit that once Vanekelenburg's vehicle was approximately 47 feet from the area of impact, it reached its point of no return, or imminent impact, and that at that moment, "the Gaughen vehicle would have just started to enter Vanekelenburg's available field of view, obstructed partially by the cornfield." He further stated that once the Gaughen vehicle was approximately 206 feet from the area of impact, it reached its point of no return, or imminent impact, and at that moment, "the Vanekelenburg vehicle would have been out of view, completely obstructed by the cornfield."

At the hearing, Amanda also offered the affidavit of a witness to the accident. In his affidavit, the witness stated that the eastbound pickup truck on County Road T, Vanekelenburg's vehicle, stopped at the intersection of County Road 17 and County Road T "for quite awhile." He also stated that the northbound pickup truck on County Road 17, Gaughen's vehicle, "was driving over 65 miles per hour as he approached the intersection from the south" and that it "was definitely substantially exceeding the speed limit." The speed limit was 50 miles per hour. Amanda did not offer evidence that the landowners should reasonably have anticipated that drivers

would proceed through the intersection when they could not see other traffic.

After the hearing, on January 18, 2011, the district court filed an order granting summary judgment in favor of the landowners, Ronald and Doug. This is the order at issue in this appeal. In the order, the district court noted that in *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010), this court adopted portions of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010). Citing *Deviney v. Union Pacific RR. Co.*, 280 Neb. 450, 786 N.W.2d 902, (2010), the district court noted that in order to prove negligence, a plaintiff must show: "1) that there is a legal duty on the part of the defendant to protect the plaintiff from injury, 2) a failure to discharge that duty, 3) damage to the plaintiff, and 4) that the damage was proximately caused by the failure to discharge the duty."

The district court stated that "the [landowners] Barteks do not argue the absence of duty though its existence in this case is far from certain." The court then noted that in Amanda's complaint, she alleged that a legal duty could be found in § 39-308. The district court stated that an argument could be made that under § 39-308, a landowner's duty does not arise until the landowner has been notified that a traffic hazard exists. Citing *A.W.*, the district court stated that "[a]bsent the existence of a specific duty or a policy exemption, a landowner would owe only the 'duty that an actor ordinarily has to exercise reasonable care when the actor's conduct creates a risk of physical harm.'" The district court then stated, "For the purposes of this order, the court has assumed the existence of a duty and does not address the issue of duty further."

The district court then stated that "[p]roximate cause is the next consideration." Notably, the district court did not explicitly discuss whether or not Ronald and Doug breached their duty. Such discussion ordinarily follows consideration of the existence of duty. Because the district court proceeded to consider causation, we assume for purposes of analysis that the district court found that Ronald and Doug had breached the applicable standard of care.

Regarding proximate cause, the district court stated that for Ronald's and Doug's actions to be considered the proximate cause, there must be no intervening cause. The district court order described an intervening cause by stating:

> An intervening cause is a new and independent force that severs the causal connection between the defendant's actions and the plaintiff's injuries. The causal connection is severed when: 1) "the negligent actions of a third party intervene, 2) the third party had full control of the situation, 3) the third party's negligence could not have been anticipated by the defendant, and 4) the third party's negligence directly resulted in injury to the plaintiff." . . . Importantly, the doctrine of intervening cause comes "into play only when the intervening cause is not foreseeable."

(Citations omitted.)

The district court then discussed the "[c]hanging [c]ontext of [f]orseeability." Paraphrasing this court's opinion in *A.W.*, the district court stated that "while the rules of duty serve as broadly applicable guidelines to be applied to corresponding categories of cases, foreseeability determinations are fact specific and incapable of serving as useful behavioral guides."

The district court next cited Nebraska cases involving blind intersections and intervening cause. Although certain of the cases had been resolved upon summary judgment and others after trial, the district court stated its understanding that it had been determined in these cases that "a driver's actions are unforeseeable as a matter of law where he or she has disregarded the obvious danger of the intersection." See, e.g., *Willet v. County of Lancaster*, 271 Neb. 570, 713 N.W.2d 483 (2006); *Delaware v. Valls*, 226 Neb. 140, 409 N.W.2d 621 (1987); *Gerlach v. State*, 9 Neb. App. 806, 623 N.W.2d 1 (2000).

Thus, based on its understanding of our prior cases, the district court reasoned that for intervening cause purposes, "the negligence of a driver who disregards the obvious dangers of an obscured intersection is not foreseeable" as a matter of law. The district court also stated that it was undisputed

that the drivers traversed the intersection "'when [they] could not see what [they] needed to see,'" quoting *Delaware v. Valls, supra*, thus creating an intervening cause as a matter of law. Therefore, the court determined that an efficient intervening cause existed due to the negligence of the drivers, Vanekelenburg and Gaughen. Having determined that an efficient intervening cause existed as a matter of law, the landowners' conduct was not the proximate cause of the accident and Ronald and Doug were not liable. Accordingly, the district court granted the landowners' joint motion for summary judgment.

After the district court filed its order granting summary judgment in favor of Ronald and Doug, Amanda filed a motion to alter or amend or, in the alternative, for pronouncement and certification under Neb. Rev. Stat. § 25-1315(1) (Reissue 2008) of final judgment regarding the claims against Ronald and Doug. After a hearing, the district court overruled this motion on January 31, 2011.

Amanda later settled with Gaughen, and Gaughen was dismissed by stipulation of the parties on November 9, 2011. Following Gaughen's dismissal, Amanda filed an amended complaint on January 26, 2012, which added an additional defendant, the State of Nebraska, Department of Health and Human Services (DHHS). With respect to DHHS, Amanda sought an order determining DHHS' interest in the proceeds of the settlement with Gaughen. On December 5, the district court filed an order resolving the dispute between DHHS and Amanda over the proceeds of the settlement. Thus, as of December 5, the only outstanding claim was Amanda's claim against Vanekelenburg, which was later dismissed with prejudice on January 14, 2013. With the dismissal of the claim against Vanekelenburg, all claims at issue in this case were resolved.

Amanda appeals from the order granting summary judgment in favor of the landowners, Ronald and Doug.

## ASSIGNMENTS OF ERROR

Amanda claims on appeal that the district court erred when it granted summary judgment in favor of Ronald and Doug.

## STANDARDS OF REVIEW

[1,2] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Harris v. O'Connor*, 287 Neb. 182, 842 N.W.2d 50 (2014). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

## ANALYSIS

In this case, the district court determined that it was undisputed both drivers disregarded the obvious dangers of the obscured intersection by proceeding to traverse the intersection when they could not see what they needed to see and that such conduct was not foreseen by the landowners. Because the actions of the drivers, Vanekelenburg and Gaughen, could not have been anticipated by the landowners, the actions of the drivers constituted an intervening cause of the accident as a matter of law. The district court determined that because the drivers' negligence was an intervening cause, the causal connection between Ronald's and Doug's actions and Thomas' injuries was severed, and accordingly, the district court granted Ronald and Doug's joint motion for summary judgment. On appeal, Amanda argues that a genuine issue of material fact exists as to whether the negligence of the drivers was foreseeable, and thus contends that summary judgment was improper. Even giving Amanda favorable inferences from the record, we find no merit to Amanda's argument, and we therefore affirm.

[3,4] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Harris v. O'Connor, supra*. Summary judgment proceedings do not

resolve factual issues, but instead determine whether there is a material issue of fact in dispute. *Peterson v. Homesite Indemnity Co*., 287 Neb. 48, 840 N.W.2d 885 (2013). If a genuine issue of fact exists, summary judgment may not properly be entered. *Id*.

[5-7] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Id*. After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id*. In the summary judgment context, a fact is material only if it would affect the outcome of the case. *Id*.

[8] The case before us is a negligence action. In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *Martensen v. Rejda Bros*., 283 Neb. 279, 808 N.W.2d 855 (2012).

[9,10] The district court and the parties devote considerable attention to the relevance of our negligence analysis in *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010), and subsequent cases applying the framework described in *A.W.* See, e.g., *Martensen v. Rejda Bros., supra*; *Ginapp v. City of Bellevue*, 282 Neb. 1027, 809 N.W.2d 487 (2012); *Riggs v. Nickel*, 281 Neb. 249, 796 N.W.2d 181 (2011); *Deviney v. Union Pacific RR. Co*., 280 Neb. 450, 786 N.W.2d 902 (2010). In *A.W.*, we abandoned the risk-utility test and adopted the duty analysis set forth in the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010) (hereinafter Restatement (Third)). Under the Restatement (Third), as a general matter, the existence of a duty serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances. See *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra*. We stated in *A.W.* that

[t]he question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. But it is for the fact finder to determine, on the facts of each individual case, whether or not the evidence establishes a breach of that duty.

180 Neb. at 210-11, 784 N.W.2d at 913. We made clear in *A.W.* that foreseeability is not a factor to be considered by the courts when making determinations of duty and that "foreseeability" determinations in the context of breach are determinations of fact. We comment further on the Restatement (Third) later in this opinion.

For the landowners, Ronald and Doug, to be successful on their motion for summary judgment, the record must show as a matter of law that they owed no duty to Thomas, that any duty owed was not breached, or that any breach was not the proximate cause of the accident.

In its analysis of negligence, the district court stated that for the purposes of its order, it assumed the existence of a duty owed by the landowners, Ronald and Doug, to Thomas. We have noted, however, that after the district court stated that it assumed the existence of duty, the court was silent on the question of breach. Instead, after stating that it assumed the existence of a duty, the district court stated that "[p]roximate cause is the next consideration." No party has assigned error to the district court's failure to address breach in general or in what manner the landowners' conduct undisputedly failed to adhere to a standard of reasonable care in particular. It would have been informative if the district court had commented on breach of duty and articulated its analysis, and in another case, findings regarding breach could be pivotal. However, given the manner in which the parties have framed the issues in this appeal, the absence of such analysis does not prevent our resolution of this case. For purposes of our analysis, we understand the district court's order to have implicitly assumed that the landowners breached their duty.

The district court considered proximate cause and determined that the negligent conduct of the drivers, Vanekelenburg and Gaughen, of disregarding the dangers of an obstructed intersection and proceeding through it when they could not

see what they needed to see, was an efficient intervening cause of the accident as a matter of law. The district court determined that because the drivers' negligence was an intervening cause, the causal connection between the landowners' actions and Thomas' injuries was severed, and therefore, the court granted Ronald and Doug's joint motion for summary judgment.

For the purposes of this opinion, we assume without deciding that the landowners owed a duty to Thomas and, as noted above, that the landowners breached their duty. For purposes of this opinion, when we refer to "negligent drivers," we are merely saying they "owed some duty of care to another yet failed to abide by that duty." See *Hersh v. E-T Enterprises, Ltd. Partnership*, ___ W. Va. ___, ___, 752 S.E.2d 336, 341 (2013). Accordingly, we turn our focus to the element of causation.

[11] To establish proximate cause, the plaintiff must meet three basic requirements. *Wilke v. Woodhouse Ford*, 278 Neb. 800, 774 N.W.2d 370 (2009). First, without the negligent action, the injury would not have occurred, commonly known as the "but for" rule. *Id*. Second, the injury was a natural and probable result of the negligence. *Id*. Third, there was no efficient intervening cause. *Id*.

[12,13] An efficient intervening cause is new and independent conduct of a third person, which itself is a proximate cause of the injury in question and breaks the causal connection between the original conduct and the injury. *Id*. The causal connection is severed when (1) the negligent actions of a third party intervene, (2) the third party had full control of the situation, (3) the third party's negligence could not have been anticipated by the defendant, and (4) the third party's negligence directly resulted in injury to the plaintiff. *Id*. We have stated that "[t]he doctrine that an intervening act cuts off a tort-feasor's liability comes into play only when the intervening cause is not foreseeable. But if a third party's negligence is reasonably foreseeable, then the third party's negligence is not an efficient intervening cause as a matter of law." *Id*. at 816-17, 774 N.W.2d at 383.

As an example of the application of the doctrine of efficient intervening cause, we considered whether such intervening cause existed in *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988), which was an appeal after trial. In *Zeller*, a passenger in a truck was injured after the truck was struck by another vehicle while driving at a low rate of speed through an unprotected and obstructed intersection. The passenger sued Howard County, Nebraska, for failing to replace a stop sign at the intersection. We observed that the truckdriver failed to take appropriate measures to avoid the collision and unreasonably disregarded the obvious danger of the intersection. We determined that the truckdriver's conduct was an efficient intervening cause of the collision, because his behavior was unforeseen to the county. We stated that

> [the truckdriver] had complete control over the situation because he could have avoided the collision by exercising reasonable care while driving the pickup toward and into the intersection. Howard County, even if negligent regarding the absent stop sign in question, was not bound to anticipate, and could not have contemplated, that [the truckdriver] would totally and unreasonably disregard the obvious danger inherent in vehicular travel into a visually obstructed intersection of public roads and fail to take appropriate measures to avoid the collision.

*Id*. at 675, 419 N.W.2d at 659.

We further illustrate the application of the efficient intervening cause doctrine in the following examples of intersection accidents from our case law and note that in each of these cases the matter was properly disposed of on summary judgment essentially because the third party's negligence could not have been anticipated.

In *Willet v. County of Lancaster*, 271 Neb. 570, 713 N.W.2d 483 (2006), a negligence action was brought against Lancaster County, Nebraska, to recover for injuries sustained following a two-vehicle collision. The driver of one of the vehicles involved in the collision ran a stop sign and struck Todd Willet's vehicle at an intersection where a private landowner had constructed a berm. Willet argued that the berm obstructed

the drivers' views at the intersection and that the county breached its duty by ignoring the risk created by the berm. The trial court granted summary judgment in favor of the county, and we affirmed.

In *Willet*, we determined that even if the county breached its duty owed to Willet, the other driver's negligent conduct constituted an efficient intervening cause. We stated that the negligent driver could have avoided the collision by exercising reasonable care in obeying the stop sign or reducing his speed so that he could react appropriately. We determined that if the negligent driver had stopped at the stop sign and proceeded cautiously, he would have seen Willet's vehicle approaching the intersection. We stated that

> [t]he County was not bound to anticipate—and could not have contemplated—that [the negligent driver] would disregard the obvious danger inherent in disobeying a stop sign and entering an obstructed intersection at high speed. Thus, [the negligent driver's] negligent behavior was unforeseeable to the County and constituted an efficient intervening cause of the collision.

*Id*. at 578, 713 N.W.2d at 489.

In *Delaware v. Valls*, 226 Neb. 140, 409 N.W.2d 621 (1987), a collision occurred between a dirt bike and an automobile at an intersection that was visually obstructed. A passenger on the dirt bike filed suit against the private landowner who was responsible for the obstruction. We ruled that the landowners

> were not bound to anticipate and cannot be said to have contemplated that [the dirt bike driver] would negligently attempt to traverse the intersection when he could not see what he needed to see in order to do so safely or that [the automobile driver] would . . . fail to see [the dirt bike] in time to avoid the collision. Thus, [the dirt bike driver's] negligence and that alleged on the part of [the automobile driver] are efficient intervening causes.

*Id*. at 145, 409 N.W.2d at 624. We affirmed the summary judgment in favor of the landowners.

Notwithstanding case law represented by the foregoing examples, Amanda suggests that after *A.W. v. Lancaster Cty.*

*Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010), the issue of whether the negligence of the drivers, Vanekelenburg and Gaughen, was foreseeable and could have been anticipated is a determination for the finder of fact and should not be decided as a matter of law on summary judgment. Amanda reads *A.W.* too broadly. As noted in *A.W.*, although foreseeability is a question of fact, there remain cases where foreseeability can be determined as a matter of law, such as by summary judgment. In *A.W.*, we discussed foreseeability in the context of breach and stated that

> [u]nder the Restatement (Third), foreseeable risk is an element in the determination of negligence, not legal duty. In order to determine whether appropriate care was exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence. The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. Thus, courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter. And if the court takes the question of negligence away from the trier of fact because reasonable minds could not differ about whether an actor exercised reasonable care (for example, because the injury was not reasonably foreseeable), then the court's decision merely reflects the one-sidedness of the facts bearing on negligence and should not be misrepresented or misunderstood as involving exemption from the ordinary duty of reasonable care.

280 Neb. at 216, 784 N.W.2d at 917. Thus, under the Restatement (Third) and after *A.W.*, foreseeability determinations can properly be made as a matter of law where indicated. See, e.g., *Riggs v. Nickel*, 281 Neb. 249, 796 N.W.2d 181 (2011).

Amanda's argument regarding the impact of *A.W.* on our efficient intervening cause case law leads to another topic touched on by the parties and the district court. Although the parties assert variously that we need not reevaluate intervening cause case law and *A.W.* does not change intervening cause

case law, there was, nevertheless, some consideration at the trial level regarding the wisdom of adopting the Restatement (Third) version of intervening cause and related principles. For several reasons, we need not settle this discussion in this case.

With respect to negligence or breach of care, the Restatement (Third), § 19 at 215, provides: "The conduct of a defendant can lack reasonable care insofar as it foreseeably combines with or permits the improper conduct of the plaintiff or a third party." We referred to this section in *Ginapp v. City of Bellevue*, 282 Neb. 1027, 809 N.W.2d 487 (2012).

The Restatement (Third), § 34 at 569, provides: "When a force of nature or an independent act is also a factual cause of harm, an actor's liability is limited to those harms that result from the risks that made the actor's conduct tortious." And § 29 at 493 provides: "An actor's liability is limited to those harms that result from the risks that made the actor's conduct tortious." The preceding proposition is sometimes referred to as "scope-of-risk" analysis, *Hale v. Brown*, 38 Kan. App. 2d 495, 499, 167 P.3d 362, 365 (2007), *affirmed* 287 Kan. 320, 197 P.3d 438 (2008), or "'scope-of-liability'" analysis, *Dew v. Crown Derrick Erectors, Inc*., 208 S.W.3d 448, 452 n.4 (Tex. 2006) (plurality opinion). In connection with scope of liability, one court has observed that the term "proximate cause" has been criticized and that the Restatement (Third) has therefore adopted a two-prong test for causation which "asks (1) whether the actor's conduct was a necessary condition of the harm (but-for or factual cause) and (2) whether the harm was the product of the risks that made the actor's conduct unlawful (scope of liability or proximate cause)." *U.S. v. Monzel*, 746 F. Supp. 2d 76, 85-86 (D.D.C. 2010).

Although the scope of risk approach has been explicitly adopted in certain jurisdictions, e.g., *Thompson v. Kaczinski*, 774 N.W.2d 829 (Iowa 2009), and *Hill v. Damm*, 804 N.W.2d 95 (Iowa App. 2011), other jurisdictions have declined to adopt it, e.g. *Hale, supra*, and *Dew, supra*, noting that adoption would require the courts to abandon decades of causation law and would increasingly preclude disposition without a trial. In a jurisdiction where the scope of liability approach

to causation has been adopted, it has been conceded that the provisions of the Restatement (Third) regarding the scope of liability analysis "seem as clear as mud." *Hill v. Damm*, 804 N.W.2d at 103. See, also, *U.S. v. Monzel*, 746 F. Supp. 2d at 86 n.16 (stating that "[d]espite the well-established reputation of the [American Law Institute], the [c]ourt has strong concerns about whether the second prong of its causation analysis, which addresses the scope of liability, is going to be any easier or clearer for judges, who must write appropriate instructions on causation, or for jurors, who must apply them"). Furthermore, recognizing the difficulty of implementing the Restatement (Third) approach, a comment to § 19 of the Restatement (Third) observes that "the issues of defendant negligence and scope of liability often tend to converge." § 19, comment *c*. at 216. The importation of foreseeability jurisprudence from our causation cases by the concurrence into its breach analysis illustrates this point.

Even if we were inclined to adopt the entire Restatement (Third) approach to negligence, causation, and intervening cause, it could not be applied in this case. Under the Restatement (Third) two-prong approach referred to above, we would have to examine, inter alia, the trial court's undisputed findings as to the risks that made the landowners' conduct unlawful. This we cannot do. Here, there is no discussion of breach by the district court or identification of the harms that resulted from the particular risks that made the landowners' conduct tortious in the first place. Therefore, we could not assess whether the conduct of the landowners, which according to the district court impliedly breached the standard of care, increased the likelihood of the harms that actually ensued. See *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010). As we noted earlier, although we have treated the district court's order as having implicitly ruled that the landowners' conduct was a breach of duty, the district court made no ruling regarding breach and no party assigns error to this aspect of the district court's order. The order as written does not permit the review contemplated by the Restatement (Third). Thus, at this time and in this case, we do not rely on the Restatement (Third) approach to intervening

cause and, instead, continue to adhere to our existing efficient intervening cause jurisprudence, which the district court correctly described.

In the present case, the record shows that the landowners planted corn up to the ditches that ran alongside County Road 17 and County Road T, that the corn had grown to over 7 feet high, and that it partially obstructed the intersection. However, just as in *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988), the drivers, Vanekelenburg and Gaughen, had complete control over the situation, because either driver could have prevented the collision by exercising reasonable care while driving toward and into the obstructed intersection. The traffic crash reconstructionist stated in his report that "[h]ad either driver been operating their [sic] vehicle more cautiously, the crash could have been avoided." There was no evidence that the landowners could have reasonably foreseen the drivers' conduct.

We have viewed the evidence in the light most favorable to Amanda and given her the benefit of all reasonable inferences deducible from the evidence. Based upon the undisputed facts of this case, although the landowners anticipated speeding, they were not bound to anticipate that drivers would disregard the obvious danger of traversing a visually obstructed unmarked intersection without being able to see what they needed to see to do so safely. Reasonable minds cannot differ that the drivers' actions could not have been anticipated by the landowners and that as a matter of law, the drivers' negligence constituted an efficient intervening cause of the collision, thus severing the causal connection between the landowners' conduct and Thomas' injuries. Landowners, Ronald and Doug, were entitled to judgment, and Amanda did not show a material fact in dispute preventing judgment. The district court did not err when it granted the landowners' motion for summary judgment.

## CONCLUSION

The district court correctly determined that the actions of the drivers, Vanekelenburg and Gaughen, constituted an efficient intervening cause of the collision, which severed the causal

connection between the conduct of the landowners, Ronald and Doug, and Thomas' injuries. Therefore, the district court did not err when it granted summary judgment in favor of the landowners. We affirm.

Affirmed.

Stephan, J., concurring.

I agree that the judgment of the district court should be affirmed. But in reaching that result, I see no need to "assume without deciding" that the landowners breached a duty of care. Instead, I conclude as a matter of law that there was no breach, and thus no negligence, on the part of the landowners who were simply making lawful use of their agricultural land to raise crops.

In *A.W. v. Lancaster Cty. Sch. Dist. 0001*,[1] this court adopted the principles of the Restatement (Third) of Torts[2] with respect to the first two elements of a negligence action: A legal duty owed by the defendant to the plaintiff and a breach of such duty. Under prior law, foreseeability of a particular injury was considered in the legal determination of whether a duty was owed.[3] Under the Restatement (Third), an actor has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.[4] But foreseeable risk is an element in the determination of breach, not legal duty.[5] In *A.W.*, we reframed the issue of foreseeability: The lack of foreseeable risk in a specific case may be a basis for a no-breach determination but not a no-duty determination.[6]

The majority cites and quotes *A.W.* for the principle that "[i]n order to determine whether appropriate care was

---

[1] *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010).

[2] Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010).

[3] See, e.g., *Sharkey v. Board of Regents*, 260 Neb. 166, 615 N.W.2d 889 (2000); *Knoll v. Board of Regents*, 258 Neb. 1, 601 N.W.2d 757 (1999).

[4] *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 1; Restatement, *supra* note 2, § 7(a).

[5] *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 1.

[6] *Deviney v. Union Pacific RR. Co.*, 280 Neb. 450, 786 N.W.2d 902 (2010).

exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence."[7] But we recognized in *A.W.* that while foreseeability is usually an issue of fact, a court may decide the issue as a matter of law "where reasonable people could not disagree about the unforeseeability of the injury."[8] We subsequently applied that principle in *Riggs v. Nickel*.[9]

It is axiomatic that if a defendant's conduct is not negligent, it does not matter whether it was the proximate cause of the plaintiff's injury. Therefore, rather than jumping to causation as the district court did, and the majority does, I would follow the *A.W.* protocol and examine the issue of foreseeability in the context of whether the landowners in this case were negligent.

Under the Restatement (Third) formulation which we adopted in *A.W.*:

> "A person acts negligently if the person does not exercise reasonable care under all the circumstances. Primary factors to consider in ascertaining whether a person's conduct lacks reasonable care are the foreseeable likelihood that the persons conduct will result in harm, the foreseeable severity of any harm that may ensue, and the burden of precautions to eliminate or reduce the risk of harm."[10]

In this context, the "extent of foreseeable risk depends on the specific facts of the case" and "small changes in the facts may make a dramatic change in how much risk is foreseeable."[11]

The alleged negligence of the Bartek brothers consisted of planting and raising corn in their field up to the point where the road ditch begins, which is approximately 25 to 30 feet from the center of the road. Ronald Bartek testified that he

---

[7] See *A.W. v. Lancaster Cty. Sch. Dist. 0001*, *supra* note 1, 280 Neb. at 216, 784 N.W.2d at 917.

[8] *Id.* at 218, 784 N.W.2d at 918.

[9] *Riggs v. Nickel*, 281 Neb. 249, 796 N.W.2d 181 (2011).

[10] *A.W. v. Lancaster Cty. Sch. Dist. 0001*, *supra* note 1, 280 Neb. at 218, 784 N.W.2d at 918, quoting Restatement, *supra* note 2, § 3.

[11] *Id.* at 216, 784 N.W.2d at 917.

and his brother had been raising corn in this manner for 35 years and that there was nothing unusual about the practice of planting corn "up to the ditch." Doug Bartek testified that he was unaware of any other motor vehicle accidents at rural intersections abutting the Barteks' farmland and that he was unaware of any such accidents at other Saunders County road intersections due to corn growing in an abutting field. Similarly, the drivers involved in the accident, Gaughen and Vanekelenburg, testified that there was nothing unusual about the rural intersection at that time of year. Gaughen, who farms in the same area, testified that there was nothing improper about the manner in which the Barteks planted their corn and that it was consistent with the manner in which he and other farmers in Saunders County plant corn.

Although violation of a statute may constitute evidence of negligence,[12] there is no merit in the appellant's argument that the Barteks violated Neb. Rev. Stat. § 39-308 (Reissue 2008). That statute provides in pertinent part:

> It shall be the duty of the owner of real property to remove from such property any tree, plant, shrub, or other obstruction, or part thereof, which, by obstructing the view of any driver, constitutes a traffic hazard. When the Department of Roads or any local authority determines upon the basis of engineering and traffic investigation that such a traffic hazard exists, it shall notify the owner and order that the hazard be removed within ten days.

The statute obligates a landowner to remove a visual obstruction that is a "traffic hazard," but it entrusts the determination of when a condition is a "traffic hazard" to state and local officials. There is no evidence that such officials ever notified the Barteks that their growing corn crop was a traffic hazard. To the contrary, Doug Bartek testified that no one from the Department of Roads or any local authority had ever contacted him with respect to the intersection and that no one else had ever questioned the proximity of the crop to the road. Similarly, Ronald Bartek testified that he had never heard of

---

[12] See *Goodenow v. State*, 259 Neb. 375, 610 N.W.2d 19 (2000).

anyone complaining of corn growing too close to a road or obstructing visibility.

The Barteks acknowledged that motorists sometimes speed on gravel roads and that their corn obstructed a motorist's view to some degree. But this general knowledge does not support an inference that a traffic accident was a reasonably foreseeable risk of the manner in which the Barteks grew their corn. The authors of the Restatement (Third) recognized that, in determining whether specific conduct constitutes negligence, "the law itself must take care to avoid requiring excessive precautions of actors relating to harms that are immediately due to the improper conduct of third parties, even when that improper conduct can be regarded as somewhat foreseeable."[13] As the majority notes, we have held as a matter of law that a motorist's negligence in proceeding through a visually obstructed intersection in disregard of obvious danger is not a reasonably foreseeable risk.[14] While we reached this conclusion in the context of efficient intervening cause, I think it is equally apposite to the assessment of foreseeability of risk in the context of negligence.

An appellate court will affirm a lower court's ruling that reaches the correct result, although based on different reasoning.[15] I would conclude as a matter of law that the Barteks were not negligent in planting their corn up to the edge of their field, and I would affirm the summary judgment in their favor on that basis.

Heavican, C.J., and Connolly, J., join in this concurrence.

---

[13] Restatement, *supra* note 2, § 19, comment *g*. at 221.

[14] See, *Willet v. County of Lancaster*, 271 Neb. 570, 713 N.W.2d 483 (2006); *Delaware v. Valls*, 226 Neb. 140, 409 N.W.2d 621 (1987).

[15] *Feloney v. Baye*, 283 Neb. 972, 815 N.W.2d 160 (2012).